FILED BY MQ D.C.
OCT 09 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

Civil Action No. ______________________

EDRICA MILLER,

Plaintiff,

v.

TROY BAER, in his individual capacity,

Defendant.

---

**COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983**

**(First and Fourth Amendments)**

**AND DEMAND FOR JURY TRIAL**

**PRELIMINARY STATEMENT**

Plaintiff Edrica Miller sues Sergeant Troy Baer of the Delray Beach Police Department under 42 U.S.C. § 1983. On October 31, 2025, Plaintiff went to the Delray Beach Police Department to file a citizen complaint against Sergeant Baer. While she waited in the lobby, Sergeant Baer approached her, followed her when she moved away, pointed a finger toward her face, told her she would be arrested if the phone she was recording with came any closer to him, and called for backup on his police radio. Approximately seven armed officers then converged on the

lobby around her. Plaintiff seeks compensatory, nominal, and punitive damages, together with the fees and costs allowed by 42 U.S.C. § 1988.

Plaintiff pleads only federal claims against Sergeant Baer in this Complaint. Her Florida common-law claims arising from the same events, and any claim against the City of Delray Beach, are not pleaded here because the pre-suit notice period in section 768.28(6), Florida Statutes, has not run.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) because it seeks redress for the deprivation, under color of state law, of rights secured by the Constitution.

2. Plaintiff's claims arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution and are brought under 42 U.S.C. § 1983.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and because the events giving rise to Plaintiff's claims occurred in Delray Beach, Palm Beach County, Florida.

4. Assignment to the West Palm Beach Division is proper because Plaintiff resides in Palm Beach County and the events at issue occurred there.

## PARTIES

5. Plaintiff Edrica Miller is an adult resident of Palm Beach County, Florida. She is identified in some communications as Queen or Kween Dee Dee Miller. Her legal name for purposes of this action is Edrica Miller.

6. Defendant Troy Baer was at all times material a sergeant employed by the Delray Beach Police Department, an agency of the City of Delray Beach, Florida. He was on duty and acting under color of state law during each event described below. He is sued in his individual capacity.

## STATEMENT OF FACTS

### A. The September 2025 Encounter

7. In or about September 2025, Plaintiff went to the Delray Beach Police Department to obtain the status and the documented results of fingerprint processing that the department had performed after she reported receiving a letter threatening to kill her.

8. Plaintiff had been told that no fingerprints were recovered. She wanted written confirmation that the examination had actually been performed, because she was concerned that the letter might be connected to the person who assaulted her with a firearm on August 12, 2022.

9. An officer whom Plaintiff recalls as Steve, badge number 305, called Plaintiff over and defended the work of the officer who had ordered the fingerprint processing. Plaintiff responded that she was there for the results, not for an opinion about another officer.

10. Sergeant Baer then met with Plaintiff and asked how he could help her. When Plaintiff asked whether anyone had explained to him why she was there, Sergeant Baer answered sarcastically. Plaintiff told Sergeant Baer that he was being rude and that she did not appreciate the way he was treating her.

11. As the exchange escalated, Plaintiff decided to leave. She told Sergeant Baer that she was going to report him.

12. Sergeant Baer asked Plaintiff whether she was threatening him and told her, in substance, that he would arrest her or that she could be arrested for making a threat.

13. Plaintiff told Sergeant Baer that if he believed she had threatened him, he should arrest her. He did not arrest her. Plaintiff left the building.

### B. Plaintiff Reports Sergeant Baer to City Officials

14. Plaintiff went to Delray Beach City Hall to report the encounter. She spoke with a City employee whom she recalls as Dean, and she was told that an assistant chief of police would contact her.

15. On October 16, 2025, the City Manager's Office confirmed by email that Plaintiff had a meeting scheduled with the City Manager for Monday, October 27, 2025, at 11:00 a.m.

16. At the October 27, 2025 meeting, Plaintiff met with Delray Beach Police Chief Darrell Hunter and City Manager Terrence Moore. She described the letter threatening her life, her effort to obtain the fingerprint results, and her encounter with Sergeant Baer.

17. Plaintiff later missed a telephone call from the assistant chief of police.

**C. The October 31, 2025 Lobby Confrontation**

18. On or about October 31, 2025, at approximately 9:49 a.m., Plaintiff returned to the Delray Beach Police Department at 300 West Atlantic Avenue, Delray Beach, Florida, to file a complaint against Sergeant Baer.

19. Plaintiff told the front-desk employee that she was there to file that complaint. The employee indicated that she was aware of the matter. Plaintiff sat down in the lobby and waited for approximately ten minutes.

20. Plaintiff was recording the encounter on her cellular telephone. She held the phone against or near her chest.

21. Sergeant Baer came through an interior doorway into the lobby, saw Plaintiff, and walked toward her from across the room.

22. Plaintiff immediately told Sergeant Baer that she did not want to speak with him.

23. Sergeant Baer continued toward Plaintiff and came close enough to her that she stood up and moved to a place where she believed the front-desk employee or a security camera could see what was happening.

24. Sergeant Baer followed Plaintiff as she moved.

25. Plaintiff repeatedly told Sergeant Baer to get out of her face. She told him that she was at the Police Department to file a complaint against him.

26. Sergeant Baer went to the front window and then directed or attempted to direct Plaintiff into a separate room to wait for another supervisor, whom Plaintiff understood to be McCabe. Plaintiff refused to go into the room and again told Sergeant Baer to stay out of her face.

27. Sergeant Baer moved back into Plaintiff's immediate personal space and told her, in substance, that she was not going to run him out of his precinct.

28. Sergeant Baer pointed his finger toward Plaintiff's face. Plaintiff told him that she was not moving, because she had been there first and he was the one following her and coming into her space.

29. Although Sergeant Baer was the one approaching Plaintiff, and although Plaintiff's phone remained against or near her chest, Sergeant Baer warned Plaintiff that she would be arrested if the phone came any closer to him.

30. Sergeant Baer then used his police radio to call what Plaintiff heard as a "Signal 94," and described Plaintiff, in substance, as merely causing trouble or acting as she usually acted.

31. Shortly after Sergeant Baer's radio call, police vehicles arrived at the building and approximately seven additional officers converged in or near the lobby around Plaintiff. Their service weapons were visible.

32. One of the responding officers directed Plaintiff to go into a separate room to speak with officers. Plaintiff refused.

33. Plaintiff did not believe that she was free to leave the lobby while Sergeant Baer and the responding officers were around her.

34. Sergeant Baer did not make physical contact with Plaintiff at any time.

35. The front-desk employee, at least two members of the public, and multiple police officers were present for some or all of the confrontation.

36. Before Sergeant Baer approached her on October 31, 2025, Plaintiff was seated and waiting. She was not threatening anyone, was not obstructing police business, and was not committing any offense.

37. Sergeant Baer knew that Plaintiff intended to complain about him. Plaintiff had told him in September 2025 that she was going to report him, and on October 31, 2025 she told him repeatedly that she was there to file a complaint against him.

**D. Aftermath**

38. Plaintiff filed an Internal Affairs complaint with the Delray Beach Police Department. Plaintiff received a written response stating that Sergeant Baer had been reprimanded. The response did not identify the nature of the reprimand.

39. As a result of Sergeant Baer's conduct, Plaintiff feared that she would be arrested, beaten, shot, or killed, and that she would not return home to her children. She experienced humiliation, anger, anxiety, isolation, and paranoia.

40. Plaintiff sought help, including by calling 211. She did not obtain counseling because she has no insurance and could not afford to pay for it.

41. Plaintiff continues to fear contact with the Delray Beach Police Department and has been deterred from further complaints about Sergeant Baer's conduct.

**COUNT I**

**FIRST AMENDMENT RETALIATION**

**(42 U.S.C. § 1983)**

**(Against Defendant Baer)**

Plaintiff realleges paragraphs 1 through 41 as if fully set forth here.

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show "1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; 2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and 3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

The second element is measured objectively: the question is whether the conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254. The Eleventh Circuit has held that "[t]he threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023), *quoted in Huggins v. School District of Manatee County*, No. 22-13325, slip op. at 19-20 (11th Cir. Aug. 15, 2025). The third element requires but-for causation. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

Plaintiff's statement that she would report Sergeant Baer, her report of him to City officials, and her return to the Police Department to file a citizen complaint against him were protected speech and petitioning activity.

Sergeant Baer threatened Plaintiff with arrest in September 2025 immediately after she said she would report him. On October 31, 2025, knowing that she had returned to complain about him, he crossed the lobby to her, followed her when she moved away, entered her personal space after she told him repeatedly to step back, pointed a finger toward her face, told her she would be arrested, and summoned approximately seven armed officers to surround her.

That conduct would deter a person of ordinary firmness from continuing to complain about a police officer or from seeking redress from police officials. Plaintiff's protected activity was a but-for cause of Sergeant Baer's conduct.

Sergeant Baer acted under color of state law and violated Plaintiff's clearly established rights under the First and Fourteenth Amendments. Plaintiff is entitled to compensatory and nominal damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

## COUNT II

## INTERFERENCE WITH THE FIRST AMENDMENT RIGHT TO RECORD POLICE

## (42 U.S.C. § 1983)

## (Against Defendant Baer)

Plaintiff realleges paragraphs 1 through 41 as if fully set forth here.

The Eleventh Circuit has held that a citizen has "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct," and that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

Plaintiff was recording Sergeant Baer's conduct inside the public lobby of a police station, from a stationary position, with her phone held against or near her chest. She was not interfering with any police operation.

Sergeant Baer told Plaintiff that she would be arrested if her phone came any closer to him, while he was the one closing the distance between them. He then radioed for officers who converged around her.

A threat to arrest a person for continuing to record is not a reasonable time, manner, or place restriction. It is a threat of arrest directed at the recording itself, and it would deter a person of ordinary firmness from continuing to record police conduct. *Turner*, 65 F.4th at 580.

Sergeant Baer acted under color of state law and deprived Plaintiff of her First Amendment right to record police conduct. Plaintiff is entitled to compensatory and nominal damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

## COUNT III

## UNREASONABLE SEIZURE UNDER THE FOURTH AMENDMENT

## (42 U.S.C. § 1983)

## (Against Defendant Baer)

Plaintiff realleges paragraphs 1 through 41 as if fully set forth here.

A person is seized within the meaning of the Fourth Amendment when, in view of all the circumstances, a reasonable person would have believed that she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544 (1980). Circumstances that may indicate a seizure include the threatening presence of several officers, the display of a weapon, and the use of language or tone

indicating that compliance is required. *Id.* A seizure effected by a show of authority requires that the person submit to that authority. *California v. Hodari D.*, 499 U.S. 621 (1991).

After Sergeant Baer's radio call, approximately seven officers with visible service weapons converged in or near the lobby around Plaintiff, and an officer directed her into a separate room. Sergeant Baer had already told Plaintiff that she would be arrested.

Under those circumstances, a reasonable person in Plaintiff's position would not have believed she was free to leave the police station lobby.

Sergeant Baer had no warrant, no probable cause, and no reasonable suspicion that Plaintiff had committed, was committing, or was about to commit any offense. Plaintiff was seated and waiting to file a citizen complaint.

Sergeant Baer acted under color of state law and caused an unreasonable seizure of Plaintiff's person. Plaintiff is entitled to compensatory and nominal damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Edrica Miller respectfully requests that this Court:

a. Enter judgment in her favor and against Defendant Baer on Counts I, II, and III;
b. Award compensatory damages in an amount to be determined by the jury;
c. Award nominal damages on any count on which a constitutional violation is proven without proof of compensable injury;
d. Award punitive damages against Defendant Baer;
e. Award costs and reasonable attorney's fees under 42 U.S.C. § 1988;
f. Award pre-judgment and post-judgment interest as allowed by law; and
g. Grant any other relief the Court finds just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable, under Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this 6th day of September, 2026.

X_______________________________

EDRICA MILLER
Plaintiff, Pro Se
918 SW 11th Terrace
Delray Beach, Florida 33444
(561) 929-6383
deedeesaiddit@6twoqueen.com